Next case is Enri C. Douglas Thomas, 2019, 2053. Mr. Thomas. Greetings, Your Honors. May it please the court. The board affirmed the examiner's section 101 rejection, relying on the abstract idea, judicial exception. However, the board did reverse the examiner on the 103 rejection. At issue is the framework test. Step one of that test requires evaluation of whether there's an abstract idea. But look, counsel, when we look at the steps of the claim, maybe A to O, maybe 15 of them, each one of them is either requesting or receiving information, going back and forth with information. This is the epitome of abstractness, passing information back and forth. It's not just general information, it's doing a specific purpose. It has a technical effect. And it's yielding something that's unconventional, was not well known. But in this case, it occurs through the transmission, solely the transmission of information, isn't that right? It includes transfer of information, but it's specific information, the claim specific. I don't think we should get held up on the fact that it involves data transmission. That's not, that's not the test. You wish we weren't, but that's what it is. It includes it, but that's not what it is. So is it your view that the character of the information is what makes it patent eligible? The passing back and forth of information? Well, in this case, the, the examiner never really identified the abstract idea. They just highlighted everything that was basically not a hardware limitation, which as we just looked at, it's a lot of... But I'm just trying to understand your theory of what makes this claim patent eligible when what I see is a lot of survey, a questionnaire. Well, there's a fundamental confusion in the law. That looks like it could be done over the phone, where a person says, can you please give me some information to create the questionnaire that you want to, you know, pose questions to participants and then back and forth, they collect the information and then they create this survey questionnaire. And then they, you know, that could all be done over the phone, for Well, I think we should stick with, with what we have to work with here. Yeah, but I'm trying to get an idea of where you think the locus of your invention, your patent eligibility is, because right now, the asking and receiving of various pieces of information to create a final questionnaire, that could all be done over the phone. And so that couldn't possibly be what makes this patent eligible. It has to be something else. That we're using a remote server in conjunction with an internet-based survey manager. And we are creating a survey through these interactions. And that was never done before. And then once we create this survey, we're able to host it on this internet-based survey manager. And that allows people to survey manager. It is akin to a server as, as the directors has noted. I thought they also pointed out that we had a previous opinion called N. Ray Thomas, where that term survey manager was interpreted to include a person. Is that right? I don't, I don't. I don't recall that, but I'm not sure. But in any case, here, the invention provides new and non-obvious functionality. It is in the processing. And there's no case that says it can't be in the processing. But Mr. Thomas, isn't the computer just being used for its traditional purpose? Receiving data, analyzing the data, outputting data. Nothing is, as I understand it, nothing is being done to the hardware of the computer itself. It's just being used in its normal way. With respect to the hardware. But the claim, as we saw, has many limitations beyond the hardware. And those limitations, in combination, were found to be not addable. You're talking about the survey items. Because of the, pardon me? You're talking about the survey items. I'm talking about all the various limitations in the claim. For example, one of them is, there's an interaction to select a participant group. And that will correlate to the people who will eventually be permitted to use the survey. Yes, sure. Computers are used for lots of things. It doesn't mean that the subject matter is not patentable. We're not patent processing. Improved technological processing. In MCRO, it was the same situation. It was the processing, not the computer. What processing is going on in the claim? The interaction with the person who desires the survey. He has to go through all these steps to create the survey. And then once created, he permits it to be hosted. And then once hosted, the inter-base survey manager is able to facilitate the appropriate participants to gain access to the survey and complete it. In step two, the question is, is there inventive concept? That is, does the claim recite something more than is well- known, routine, or conventional? Here, there should be no doubt that that is the case. There is something more. And that something more is in the findings and conclusions in the record from the board that certain limitations in the claim, processing limitations, were found non-obvious. Since the inventive concept notion is akin to what cases kind of imply, there's something less formal than obviousness determination. Well, that's one of the problems. The Supreme Court has dealt with 101, bringing in concepts of obviousness. But we've kept them separate. Well, the Supreme Court said it was the crux of step two. And if that's the case, the... In other words, step two is an obviousness question? No, step two is, is whether the claims recite something more than what is well known, excuse me, well understood, routine or conventional. And it also has to be something that's not the abstract idea itself. Exactly. So if what you're pointing to as being novel, or non-obvious, is still part of the abstract idea, then that's not something you can count on. No, no, no, no. To point to as being... Please don't talk through the question. My apologies, sir. In this case, the board found the abstract idea to be performing surveys. That is clearly wrong, because the claim is not directed to performing surveys. But if that's the abstract idea, the balance of the claim remains to be considered for the inventive concept. And here, the board found limitations in claim 20, processing ones, to be non-obvious. And that, by definition, must establish that those limitations, which were not part of the abstract idea of performing surveys, they are something more that is necessarily not well understood, routine or conventional. So you think this is a case of first impression, and that we should hold, that where the board, at some stage of the proceedings, has found the claims to be non-obvious, even though ineligible under 101, ipso facto, they should therefore have been found to have met the inventive step aspect of step two. Yes, I think a written opinion would clarify that an obviousness determination is also an inventive concept determination in probably most, if not all, instances. I'm going to hold the balance of my time for a while. We will certainly do that. Mr. Matich? Yes, Your Honor, Matich. Thank you. And may it please the court, Mr. Thomas's patent application seeks to claim an ordinary survey done on an ordinary computer. Surveys are not patent eligible subject matter. As the specification itself says, at Appendix 53, surveys have long been part of economic, commercial, and political life. Nothing in the claims technical limitations moves them beyond the abstract. The computers are described in purely functional terms. So if something is novel, and non-obvious, and definitely claimed, and adequately supported by the written description, and fully enabled to one's skill and the art, it could still nevertheless be patent ineligible for being an abstract idea? So, Your Honor, this court and even the Supreme Court have acknowledged there's a little bit of tension in between the 103 and 101 analyses. Here, the board... Is the answer yes? It still can be patent ineligible to be directed to nothing more than an abstract idea? So, yes, Your Honor. For example, in SAP America, this court said that we could assume that something is novel and groundbreaking, but if it's an innovation not in an eligible area, so in that case, it was a financial statistical analysis, that's not something that's patent eligible. Here, I don't think that's what we have going on. Here, Mr. Thomas's application claims simply just doing a survey on a computer, and then the computers are described in purely functional terms as computers that do the things necessary to automate the survey function. So, I don't think one needs to delve into the exact line between 101 and 103 analysis here. Indeed, in fact, Mr. Thomas's brief at page 25 admits that the remote server element of his claim, which is this element that does most of the computing work, is in fact a generic computing device. The purported advance of Mr. Thomas's invention is simply automating an ordinary survey on a computer. This court has repeatedly held that that kind of subject matter is not patent eligible. That's what the board held here, and for that reason, this court should affirm. In other words, the board's finding of non-obviousness should just be ignored by us. No, Your Honor. I don't think you necessarily need to ignore it, although I don't think it necessarily requires a full written opinion to deal with it. Here, the board expressly dealt with the tension. Do you mean Rule 36? If this court were to decide to issue a Rule 36 in this case, we would not object to that. Never have. At Appendix 20 and 21, which is the board's response to Mr. Thomas's request for rehearing, the board squarely dealt with the tension between 101 and 103 and said, notwithstanding that, we think this is subject matter ineligible. I think it could also be helpful to look at Appendix 12 and, I'm sorry, 13 and 14, where the board discusses which aspects of the claims it was saying weren't discussed. So at 14, weren't found in the prior art, it says, requesting identification of one or more participant groups from a plurality of available participants with the claim limitation that the board said wasn't in the prior art. That's at the core of the abstract idea, just the idea of asking for survey information. Unless the court has additional questions, I'm happy to yield the remainder of my time. Thank you, counsel. Mr. Thomas has some rebuttal time. It's always a problem when the Patent Office can't apply the abstract idea inquiry properly. The board found a new abstract idea and the fundamental problem is the claim is more than 300 words. The board whittled it down to two words. The director whittled it down to one. In their brief, they dropped the word performing and just call it surveys. But it's not performing a survey, it is not a survey. It's a method for creating and hosting surveys. If we look again back to step two, we see that what was considered was only two things, performing surveys as the abstract idea, and then what else did they look to in that 310 words? They found basically two, remote server. And it's easy to say that that's... Because if we get to step two, it's because step under step one, the claims are abstract. Do you concede that they're abstract? I do not concede that they are abstract. They are creating something that was not created before. But we have many opinions where something was allegedly created that had not been created before. Are you familiar with the electric power group opinion? Vaguely. So that's an opinion where nobody disputed that that system for displaying information that was collected through a whole host of sensors that were measuring different conditions across a large power grid. Where all this information was being collected, it was being combined together, distilled and analyzed, and then ultimately stored and then presented on a display in some power grid. And even if that was something that had never been done before, the whole scheme of collecting information, storing information, displaying information for some person to use was deemed to be directed to simply an abstract idea. And ultimately, no inventive concept was found because there was no actual improvement to a computer. Yes, maybe a computer never performed this particular function before, but because the claim was recited at such a high level of generality, it was deemed to be too result oriented to be anything more than just the abstract idea of ultimately collecting, transmitting, storing, displaying information. Yeah, I think that's one of the fundamental problems I see is that the characterization of the abstract idea. What does that really do to the claim? In this case, it appears that it basically captures 308 words other than remote server. And that seems to be completely unfair. In the MCRO case, that was processing limitations. They were effective. Core wireless was also information driven about displaying information. This is the information technology world we're living in. These are what the inventions are. And if it's continuously found that calling something an abstract idea means you can completely eviscerate all the processing limitations of the claim, that would seem to be a real travesty. In this case, that's what happened. And that's why there's no real analysis under step two, because they just ignore everything other than what they deem to be a hardware limitation. I believe a written opinion could clarify this. That all claim limitations, not within the abstract idea. As you see, your time has expired. Do you have one final thought? Yes, all limitations should be considered. Claim should be considered as a whole. And just because there was a finding of abstractness somewhere in the claim doesn't mean all the limitations shouldn't be considered. Preemption should be a guidepost. And there's no reason why this claim creates a significant preemption concern. And since that is the undertone of the abstract idea exception, that should be used as a benchmark. Thank you, counsel. We have your position. Thank you.